FRANK L. BLASKE v. CHRIST WEHMEYER, Appellant.

Division Two, December 20, 1920.

1. EVIDENCE: Improper Answer: What He Thought. Where one of the contested issues in the action for "made" land was how far southward a certain island had been extended by accretion, and the question asked plaintiff was, "Does the island extend only to where defendant claims, or to the slough, or where does it go?" his answer, "I think I bought it clear over to the slough," should have been stricken out on motion. What he thought about the matter was not a statement of fact, but a mere opinion, and under the facts what the plaintiff thought may have influenced the jury in arriving at their verdict for him.

2. ————: Written Instruments: Tax Receipts: Oral Testimony of Their Contents. Unless a proper foundation is laid for the introduction of secondary evidence, oral testimony of the contents of written instruments is not proper, but the instruments themselves should be offered. Where the plaintiff sued for an island recently formed, testimony that his tax receipts showed that he had paid taxes on 200 or 260 acres on the island should not have been admitted, the receipts themselves being the best evidence, because they might show that the land sued for was not a portion of the land on which taxes were paid, and if they did show that plaintiff had paid taxes on the land in dispute they would be a circumstance indicating the nature of his possession or of his claim to the land.

3. ACCRETIONS: Description: In Instructions, Etc. In the trial of an action for "made" lands, the description in the instructions, verdict and judgment should fall within the description set forth in the petition.

Appeal from Gasconade Circuit Court.—*Hon. William A. Davidson,* Special Judge.

REVERSED AND REMANDED.

*August Meyer* and *Jesse H. Schaper* for appellant.

(1) Upon the record the judgment is erroneous, and should be reversed on this appeal. (a) Because the verdict of the jury failed to describe any land. This was an action at law for the recovery of real estate, and the issues made by the pleadings having been submitted to the jury for their determination, it was incumbent on the jury in finding the issues for the plaintiff to describe such lands as they intend he should recover, under the pleadings in the case. In such a case it is not sufficient for the jury to simply find the issues for the plaintiff, and so state in their verdict, but, if the plaintiff was entitled to recover at all, under the evidence and the pleadings, it was imperative on the part of the jury to describe such land as plaintiff was entitled to recover. Brummell v. Harris, 148 Mo. 446; Benne v. Miller, 149 Mo. 245. (b) Because the judgment itself failed to describe definitely and with certainty any part of the lands described in the petition, in this, that it recites " that the parcel of land located north of the middle of a certain slough, in the Missouri River, next to the high bank, and located between lines running north and south, respectively, 6.25 and 26. 50 chains east of the range line on the west side of Range 6 west, in Gasconade County, Missouri, is a part of a certain island in the Missouri River, known as Robert Miller Island, and that plaintiff is the owner thereof, etc." 32 Cyc. 1378; Brummell v. Harris, 148 Mo. 430. (2) The trial court erred in admitting illegal and improper evidence offered by respondent. (a) The testimony and opinion of Frank L. Blaske, the plaintiff, that he thought he bought clear over to the slough. Jones on Evidence (2 Ed.), par. 434. (b) The testi-

mony of Frank L. Blaske, the plaintiff, concerning the payment of taxes by him on 260 acres of land on the island. This was a substitution of parol for documentary evidence, or secondary for primary evidence, in the absence of any legal excuse shown for failing to produce the tax books of the county showing the payment of the taxes on the particular lands in suit. Jones on Evidence (2 Ed.), par. 199.

*J. W. Hensley* and *Robert Walker* for respondent.

(1) The court could submit to a jury the question of fact as to what was an accretion to Robert Miller Island, and as to whether the land in dispute was an accretion to Robert Miller Island. Lee v. Conran, 213 Mo. 404. (2) And it could also submit the question of fact to a jury for trial as to whether defendant had been in the open, peaceable, notorious and adverse possession of the land in question for ten years or more before the filing of plaintiff's petition, as claimed by defendant. Stone v. Perkins, 217 Mo. 586. (3) Under instructions based on well established principles of law, the jury found such issues for plaintiff. Benson v. Morrow, 61 Mo. 350; Buse v. Russell, 86 Mo. 209; Cooley v. Golden, 117 Mo. 33; Frank v. Goddin, 193 Mo. 390. (4) A jury's verdict is to be construed and applied reasonably in the light of all proceedings. Respondent claims to be the sole owner of all of Robert Miller Island, and its accretions. Defendant comes in and claims that for one reason or another, he is the owner of a part of the Robert Miller Island. The jury found for the plaintiff, and the verdict was sufficient for the purposes of the trial. Mueller v. Hospital Assn., 73 Mo. 242; Stout v. Calver, 6 Mo. 354; Schaabs v. Wheel Co., 56 Mo. 173; Hoyle v. Farquharson, 80 Mo. 378.

WILLIAMS, P. J.—This is an action under Section 2535, Revised Statutes 1909, to determine title to land situated in Gasconade County, Missouri. Trial was had

in the Circuit Court of Gasconade County before a jury, resulting in a verdict and judgment in favor of plaintiff. Defendant has duly appealed.

Plaintiff's petition alleges that he is the owner of a certain island in the Missouri River known as Robert Miller Island, as surveyed and patented by the County of Gasconade, on November 28, 1903, to Ransome A. Bruer and J. W. Hensley, including all accretions to said island; that said island when surveyed and patented embraced certain portions of land in Section 31 and Section 32, all in Township 46, Range 6, west. The petition further alleges the amount of acreage in each portion of said sections wherein said island was located. It should be noted here that the petition does not allege that any of said island is located in Section 6, Township 45, Range 6, west (which said Section 6, as shown by the evidence, adjoins and is immediately south of said Section 31. It would appear from the evidence that the land in dispute is in Section 6).

Defendant, Christ Wehmeyer, filed a separate answer (originally there were other defendants, but plaintiff dismissed as to them during the trial), in which said answer defendant denied the allegations of the petition, except to allege that he claimed title to the following described land in Gasconade County, to-wit:

"Part of the northwest quarter of Section 6, Township 45, Range 6, west, more particularly described as follows, to wit: Commencing 6.25 chains east of the northwest corner of Section 6, Township 45, Range 6, west; thence running east 20.25 chains; thence south twenty-nine chains, to the center of Shawnee Creek; thence east along said Shawnee Creek up the Bailey's Creek, thence in southwestern direction along said bank of Bailey's Creek to the center line of Section 6; thence west 21.25 chains along said center line of Section 6 (running east and west) to an iron rail piece; thence north 41.04 chains to the place of beginning, containing in all eighty-nine acres, more or less."

It will be noted that the last above described tract of land lies in Section 6, which, as above stated, lies adjoining and immediately south of Section 31 describ-ed in plaintiff's petition.

The jury returned the following verdict (formal parts omitted): "We the jury find the issues in favor of the plaintiff."

Upon this verdict the court entered a judgment, in part, as follows: "It is adjudged and decreed by the court that the parcel of land located north of the middle of the certain slough, in the Missouri River, next to the high bank, and located between lines running north and south, respectively, 6.25 and 26.50 chains east of the range line on the west side of Range 6, west, in Gasconade County, Missouri, is a part of a certain is-land in the Missouri River, known as Robert Miller Island, and that plaintiff is the owner thereof, and that his title thereto is a fee-simple estate, and that defendant Christ Wehmeyer has no right, title or interest in said land."

We have encountered much difficulty in interpreting the record before us, due in part to the fact that wit-nesses have not been accurate in their expression; the word "slough" has been used many times in the record, and it has been difficult at times to ascertain which particular slough was meant; furthermore, some of the witnesses were examined with reference to certain photographs marked "Exhibits A" and "B," but these photographs do not appear in the record and do not appear to have been introduced in the evidence. Further complications arise from the fact that defendant offered in evidence "Exhibit Number 2" which purports to be a survey of Miller Island. When witnesses were ex-amined concerning this exhibit reference is made to certain blue, yellow and black lines. The copy of the exhibit brought here shows only black lines. We have read the record twice in an attempt to learn the material facts, and will state below the result of that labor.

It appears that the original Government survey did not show an island located in the Missouri River at the point where Robert Miller Island is located. The island formed sometime prior to 1903, and for seven or eight years prior to that time one Robert Miller lived on this island and cultivated about fifty acres of land. In June of 1903 there was a great flood in the Missouri River, which washed away the house in which Miller lived and a greater portion of the island. Miller then moved from the island.

In September, 1903, the County Court of Gasconade County caused Robert Miller Island to be located, surveyed and platted as lands belonging to Gasconade County, for the use of the public schools under the Act of the Legislature of Missouri of 1895. This survey was completed and by proper steps Miller Island was patented by Gasconade County and sold, and the title thereto has by mesne conveyances passed to the plaintiff.

The survey which was made by the county surveyor was offered in evidence by the plaintiff and said survey shows all of Robert Miller Island lying within Sections 31 and 32 mentioned in the petition.

At the time this island was surveyed defendant owned the land described in his answer, which land was in Section 6 adjoining and immediately south of said Section 31. At that time defendant's land was separated from Robert Miller Island by a large slough. Subsequently to 1903 and at different times portions of the north side of said island washed away and accretions formed on the south side of said island. The extent and location of these accretions on the south side of the island are not definitely given in the testimony. The nearest approach thereto is found in the testimony of Robert Miller, wherein the following question and answer appears:

"Q. What is the formation of this island; are there any sloughs or cuts through it? A. There is no slough between the north bank of the island and the slough next to the high bank as shown by this picture."

One witness said: "It [the island] kept moving around, working south all the time; . . . cut the bank away; it cut away from the north and growed south."

The following question and answer appears in the testimony of Mr. Gillsaw:

"Q. When the river gets up high that there is a stream of water between the island and the main land, where does the stream of water flow? A. Right around the high bank next to Wehmeyer's."

Mr. George Miller testified that for several years past "the only deep slough has been next to the main bank on the south side." It further appears that there was a high bank on the south side of this slough, which slough plaintiff claims separated the island from the main land. Plaintiff's witnesses testified that there was now no slough dividing the island; that at one time a slough did run through the island, but that it had practically filled up, and the only remaining slough was the one which now formed the southern boundary of the island.

The evidence upon the part of the defendant tends to establish the following facts:

Defendant purchased the land described in his answer and received a deed therefor in 1882. At that time there were two 40-acre tracts between his northern boundary and the river bank. Afterwards these two 40-acre tracts and 30 or 40 acres of the northern portion of this tract were washed away by high water. Defendant testified that he had been in possession of the land described in his answer ever since the purchase thereof, and it appears to be his theory that the land described in the judgment came back to him by accretion to his land which did not wash away. But the evidence on this point is not very clear. One of defendant's witnesses testified that a new island formed in the river between Robert Miller Island and the south bank of the river. The defendant's evidence also tended to show that Miller Island at one time completely washed

away. Reference to further testimony will be made in the course of the opinion.

I. During the direct examination of plaintiff the following occurred:

"Q. How far the Robert Miller Island extends? A. It ain't there now no more, only the lower corner, and a little on the upper corner.

"Q. Does it go only to where Wehmeyer claims or to the slough, or where does it go? A. I think I bought it clear over the slough.

"MR. SCHAPER: I move to strike out what he thought he bought, on the ground that his answer is a mere opinion.

"MR. WALKER: Does that belong to the island over to the slough? A. It ought to belong to the island.

"MR. SCHAPER: I move that be stricken out on the ground it is not for the witness to determine what ought to belong to the island.

"THE COURT: That part may be stricken out, but the part he said he bought over to the slough may stay in.

"MR. MEYER: If the court please, the answer was a peculiar one; he said he thought he bought all the island to the Morrison side; that is a mere opinion and that ought to be striken out, what he thought he bought; that was his answer.

"THE COURT: I think that is all a man could say; let it stay in. I don't think that makes any difference; how could a man know what he bought; he thought he bought it; whether he did or not, that is a question for the jury; the deed tells what he bought.

"To which ruling of the court the defendant, by counsel, then and there duly excepted."

Appellant assigns the foregoing as error. We are of the opinion that the assignment is well taken.

One of the contested issues in the case was how far southward Robert Miller Island extended by accretion. What the plaintiff thought about the matter was

not a statement of a fact, but a mere opinion. It was wholly incompetent for any purpose, and should have been stricken out on appellant's motion. What the plaintiff thought may have and no doubt did influence the jury in arriving at their verdict.

II. Appellant further contends that the court erred in permitting plaintiff, over the objection and exception **Tax Receipts.** of appellant, to testify that his tax receipts showed that he had paid taxes on 200 or 260 acres of land on this island. Appellant contended at the trial and here that the tax receipts would be the best evidence, and furthermore the evidence should show upon what exact land the taxes were paid. We think this position is well taken. Unless it should appear that the land in dispute was a portion of the land upon which taxes were paid, the payment of taxes would be wholly immaterial to the issues of this suit. If on the other hand plaintiff had paid taxes on the land in suit and desired to show that fact as a circumstance indicating the nature of his possession or of his claim in said land, the best evidence showing that fact (the written evidence) should have been offered when objection was made unless proper foundation was laid for the introduction of secondary evidence.

III. Appellant further contends that the evidence does not support the judgment, and that the instructions are erroneous in that they are not based upon the land **Instructions.** described in the petition. Since the case must be retried we deem it inadvisable to undertake to pass upon the sufficiency of the confusing record now before us. We might be permitted to say in passing, however, that it is undoubtedly the better and safer practice that the land in dispute should be accurately described in the petition, and the description in the instructions, verdict and judgment should fall within the description thus set forth in the pleadings.

Furthermore when a survey or plat used in evidence has lines of different colors to which reference

is made in the testimony, the abstract should definitely show in some manner the color of the respective lines in order that an intelligent understanding may be had of the facts. It is to be presumed that all these matters will be obviated upon a retrial and hence we will forego further discussion now.

The judgment is reversed and the cause remanded. All concur.